**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CENTRAL FOOD CORPORATION, d/b/a REDDI GOURMET and REDDI GOURMET, LLC,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>DEAN'S PORK PRODUCTS, INC., SAL NAP CORPORATION, SALVATORE NAPOLITANO, MICHAEL DEANGELIS, and JAMES POLICASTRO,<br><br>*Defendants.* | Docket No.<br><br>____________________<br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

Plaintiffs Reddi Gourmet, LLC ("RG") and Central Food Corporation ("CFC") (collectively "Plaintiffs"), by and through their undersigned counsel, as and for their Verified Complaint against defendants Sal Nap Corporation, DeAn's Pork Products, Inc., Salvatore Napolitano, Michael DeAngelis, and James Policastro, individually (collectively "Defendants"), hereby allege as follows based on their personal knowledge and on information and belief as to all other matters.

**NATURE OF THE ACTION**

1. This lawsuit concerns Defendants' ongoing, willful trademark infringement, trade-dress infringement, unfair competition, false advertising and, as to defendants Salvatore Napolitano and Sal Nap Corp., their outright theft of at least $93,000 from CFC.

2. Plaintiff CFC is the sole licensee of the REDDI GOURMET trademarks associated with premium meat and premixed seasoning blends.

3. One of CFC's most successful products is its premixed seasoning blends which it offers under the REDDI GOURMET brand. CFC's business model involves selling its various premixed seasoning blends to supermarkets and grocery stores who then, in turn, season their meat or the meat of third-parties with CFC's seasonings, wrap the seasoned meat in clear cellophane packaging and apply a REDDI GOURMET adhesive label to the cellophane package.

4. The REDDI GOURMET label and how it appears on grocers' packaging is below:












5. Based on CFC's longstanding, continuous offering of REDDI GOURMET-branded seasonings using its familiar labeling, consumers uniquely associate the labeling with CFC. Defendants, however, are willfully trading off this unique association to manufacture turnkey brand recognition and consumer demand for their infringing line of "REDDI SERVE" seasonings on "READY TO COOK GOURMET SEASONING" packaging. For example, as shown below, Defendants use labels for their seasoning products that are substantially similar to, and create the same overall commercial impression as, CFC's labeling that it uses for its REDDI GOURMET-branded seasonings products for over 25 years:




DeAn's Of Brooklyn
Chicken Seasoning
Ready
To Cook
Gourmet
Seasoning




6. In a further attempt to copy Plaintiffs' REDDI GOURMET brand, Defendants use Plaintiffs' distinctive spelling "Reddi" — R-E-D-D-I — along with "Ready" and "Gourmet" which appear vertically "stacked" on the label and in a larger typeface than the surrounding words "To," "Cook," and "Seasoning," such that the phrase "Ready Gourmet" is given prominence

within Defendants' trade dress and, by extension, contributes to the overall likelihood of confusion between CFC's and Defendants' products. This is all in addition to the Defendants' use of the same gradient transition color combination of yellow to red in the words "Ready" and "Gourmet" as reflected in Defendants' labels shown above and below.

7. Defendants' bad acts do not end with their continued contumacious infringement of Plaintiffs' intellectual-property rights. For example, each defendant has ignored Plaintiffs' demand letters that they immediately cease and desist from continuing their infringing activity. Instead, Plaintiffs have learned that Defendants have expanded into additional retailers, in particular SHOPRITE® stores in New Jersey, with their infringing products since receiving Plaintiffs' October 1, 2026, letters.

8. Additionally, Salvatore Napolitano, who was a trusted broker for CFC for some 25 years and has intimate knowledge of all facets of CFC's business including its finances and revenue streams, has, in addition to being instrumental in Defendants' unlawful scheme to infringe upon the REDDI GOURMET's brand as alleged herein, perpetrated a series of thefts over several years against CFC, totaling amounts exceeding $90,000.

9. In short, CFC will not tolerate junior users attempting to manufacture turnkey brand recognition and consumer demand for their products by free-riding off the decades of goodwill and consumer recognition that CFC has developed in its REDDI GOURMET brand. Yet, that is precisely what Defendants are doing. Nor will CFC sit back and permit Salvatore Napolitano to defraud the company to the tune of almost six figures.

10. Based on the foregoing, and all of the allegations below, Plaintiffs bring this lawsuit for trademark infringement, trade-dress infringement, unfair competition, false association, false

designation of origin, false advertising, false endorsement and civil conspiracy, under federal and New Jersey law and, in the case of Salvatore Napolitano, New Jersey state claims for unjust enrichment, conversion, and breach of a duty of loyalty.

**THE PARTIES**

11. Plaintiff Reddi Gourmet, LLC is a Florida corporation, with its principal place of business located at 1507 Park Avenue, Asbury Park, New Jersey 07712.

12. Plaintiff Central Food Corporation is a New Jersey corporation, with a principal place of business located at 1507 Park Avenue, Asbury, New Jersey 07712.

13. Defendant Sal Nap Corporation is a New York corporation, with its principal place of business located at 51 Powers Lane, Montgomery, New York 12549 ("SalNap").

14. Defendant DeAn's Pork Products, Inc. is a New York corporation, with its principal place of business located at 789 Laconia Avenue, Staten Island, New York 10306 ("DeAn").

15. Defendant Salvatore Napolitano is a New York resident, with an address located at 51 Powers Lane, Montgomery, New York 12549 ("Napolitano").

16. Michael DeAngelis is a New York resident, with an address located at 789 Laconia Avenue, Staten Island, New York 10306 ("DeAngelis").

17. James Policastro is a New Jersey resident, with an address located at 12 Schindler Court, Upper Saddle River, New Jersey 07458 ("Policastro").

**JURISDICTION AND VENUE**

18. The claims for trademark infringement, trade-dress infringement, unfair competition, false association, false designation of origin, false advertising, and false endorsement asserted in Counts I-IV below, arise under the Trademark Act of 1946 (as amended), namely, 15

U.S.C. §§ 1051 *et seq*. Accordingly, this Court has subject matter and original jurisdiction over Counts I-V pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121.

19. The claims for trademark infringement, trade-dress infringement, and unfair competition asserted in Counts V-VII below arise under New Jersey statutory and common law, and are so related to the federal claims asserted in Counts I-IV below, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts V-VII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

20. As for the civil theft-related claims against Sal Nap and Napolitano personally, his tortious acts giving rise to this litigation and the resulting harm he caused to CFC has occurred and is occurring in New Jersey, including in this District. He also acted with the knowledge that his unlawful acts would cause harm to CFC in New Jersey and in this District. Sal Nap, Napolitano, and CFC's customers and potential customers reside in New Jersey, including in this District.

21. Based on Plaintiffs' knowledge and information, Defendants solicit and transact business on a regular, continuous, and systematic basis within the State of New Jersey (including shipping products into this District that feature Defendants' infringing labels and trade dress). Plaintiffs' claims in this lawsuit arise out of and relate to Defendants' regular, continuous, and systematic solicitations and transactions of business within the State of New Jersey, including in this District. Accordingly, Defendant is subject to personal jurisdiction in the State of New Jersey, including in this District.

22. As alleged herein Defendants' wrongful acts and conduct occurred in substantial part in this District. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

23. As alleged above, Defendant is subject to personal jurisdiction in this District. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I. Plaintiff CFC

#### A. CFC's History and Business Relationship to RG

24. As CFC proudly and conspicuously promotes on its website, https://www.reddigourmet.com/about-us/, CFC was founded in 1995. "As consumer demand for convenience continued to rise in the late 90s, Central Foods maintained its commitment to consistency, quality and variety. The result? Reddi Gourmet, which today provides retailers and foodservice establishments the products, tools and industry insight to lead today's consumer menu planning trends."

25. For more than 25 years, the REDDI GOURMET brand has grown into a regional leader in high-quality premixed seasoning blends.

26. CFC operates the business of the REDDI GOURMET, while RG owns the REDDI GOURMET-formative U.S. registered trademarks described below. CFC operates with a trademark license from RG.

#### B. Plaintiff's "REDDI GOURMET" Products

27. CFC currently offers more than 100 products throughout New Jersey, New York, Connecticut, Pennsylvania, Delaware, Maryland and Massachusetts, including, for example, its premixed seasoning blends and a variety of premium meat products.

28. CFC offers its products under its REDDI GOURMET brand in several major New Jersey and Northeast-based retail grocers, including SHOPRITE®, STOP N' SHOP®, KEY

FOODS®, KINGS FOOD MARKETS®, FOODTOWN® as well as several other independent grocers.

### C. Plaintiff's "REDDI GOURMET" Intellectual Property

29. Since at least as early as 2000, CFC has continuously offered its REDDI GOURMET premixed seasoning blends to retailers as described above.

30. In connection with its offering its seasonings, CFC has continuously used the REDDI GOURMET brand and trademarks in commerce for more than 25 years.

31. Through this long and substantially exclusive use, the Plaintiffs' marks have acquired strong common-law trademark rights and have come to be uniquely associated by consumers with CFC as the source of high-quality food products.

32. In addition to its extensive common-law rights in the REDDI GOURMET marks, RG is the owner of numerous U.S. federal trademark registrations for REDDI GOURMET in the United States Patent and Trademark Office ("USPTO"), including the following:

- REDDI GOURMET (U.S. Reg. No. 2553612) for "corn beef, cooked roast beef and chopped beef sold as formed hamburgers" in International Class 029 and "dry spices, stuffing mixes containing bread" in International Class 030, registered on March 26, 2002;
- REDDI GOURMET (U.S. Reg. No. 4291209) for "Poultry; turkey; pork; meat; sausages; meatballs; [ fish (not live); ] prepared or packaged meals and entrees consisting primarily of meat, poultry [ or fish; ] poultry packaged with sauces or coatings; meat packaged with sauces or coatings; turkey burgers; marinated turkey breast; stuffed turkey breast; marinated turkey london broil; marinated turkey kabobs; turkey kabobs; turkey meatloaf; turkey meat balls; turkey patties for use in making slider sandwiches; BBQ chicken thighs; marinated chicken thighs;

chicken kabobs; marinated chicken kabobs; marinated chicken breast; chicken breast with stuffing; panko breaded chicken breast; stuffed chicken breast; chicken cordon bleu; chicken braciole; [ chicken sausage; ] chicken patties; chicken patties for use in making slider sandwiches; breakfast chicken sausage; pork kabobs; marinated pork kabobs; pork chops; stuffed pork chops; pork braciole; beef patties; beef chuck patties for use in making slider sandwiches; marinated beef kabobs; beef kabobs; beef flank steak pinwheels; stuffed beef flank steak; beef meatballs; beef meatloaf; beef braciole; corn beef; cooked roast beef; flat iron steak; sausage patties; baby back ribs; sausage; chorizo; corned beef brisket; corned beef round [ ; tilapia fillets; salmon fillets; swai fillets; fish sticks ]" in International Class 029 and "dry spices, stuffing mixes containing bread" in International Class 030, registered on February 19, 2013; and

- Reddi Gourmet (REDDI GOURMET CENTER OF THE PLATE MENU PLANNING and Design) (U.S. Reg. No. 4291210) for "poultry; turkey; pork; meat; sausages; meatballs; [ fish (not live); ] prepared or packaged meals and entrees consisting primarily of meat, poultry [ or fish] ; poultry packaged with sauces or coatings; meat packaged with sauces or coatings; turkey burgers; stuffed turkey breast; turkey meatloaf; turkey meat balls; turkey patties for use in making slider sandwiches; pork chops; stuffed pork chops; pork braciole; chicken breast with stuffing; panko breaded chicken breast; stuffed chicken breast; chicken cordon bleu; chicken braciole; marinated chicken kabobs; [ chicken sausage; ] chicken patties; chicken patties for use in making slider sandwiches; breakfast chicken sausage; beef patties; beef burgers; beef chuck patties for use in making slider sandwiches; beef flank steak pinwheels; stuffed beef flank steak; beef meatballs; beef meatloaf; beef braciole; flat iron steak; sausage patties; baby back ribs; [ sausage;

chorizo;] corned beef brisket; corned beef round [ ; tilapia fillets ; salmon fillets; swai fillets; fish sticks ] in International 029, registered on February 19, 2013.

33. Collectively, the three registrations referenced above are referred to as the "REDDI GOURMET Marks."

34. The REDDI GOURMET Marks are valid, well-known, subsisting and in full force, and serve as *prima facie* evidence of Plaintiffs' exclusive rights in and to the REDDI GOURMET marks. Additionally, REDDI GOURMET Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus constitute conclusive evidence of Plaintiffs' exclusive right to use these marks on the goods specified in the registrations pursuant to Sections 7 and 33 of the Lanham Act, 15 U.S.C. §§ 1057, 1115(b).

35. As a result of decades of continuous use, widespread circulation, significant investment in the brand, and extensive promotion, the REDDI GOURMET Marks are highly distinctive and enjoy substantial goodwill.

36. The REDDI GOURMET Marks serve as a source identifier signifying REDDI GOURMET products and the excellent reputation associated with each.

37. Members of the public encountering the REDDI GOURMET Marks reasonably expect that goods offered under the marks originate from, are affiliated with, or are authorized by CFC.

38. Plaintiffs are the exclusive owners of all intellectual property rights in and to the REDDI GOURMET Marks and labels.

39. Through its business model, whereby CFC sells its premixed seasoning blends directly to supermarkets and grocery stores, it maintains control over the use of its trademarks in

connection with the finished product, ensures consistency and quality in how the REDDI GOURMET Marks are presented to consumers, and preserves the goodwill and reputation associated with the REDDI GOURMET Marks.

**i. CFC's REDDI GOURMET Label Trade Dress**

40. Plaintiffs are the exclusive owners of the trade dress featured on the REDDI GOURMET labels as shown above.

41. The trade dress that Plaintiffs use to identify the REDDI GOURMET brand as the exclusive source of products featuring the REDDI GOURMET Marks consists of six elements. First, originating at the top center of the REDDI GOURMET label, and appearing in an italics typeface, appears the registered mark, REDDI GOURMET. Second, the appearance of the REDDI GOURMET mark on the labels utilizes transitioning colors, yellow on the bottom of the words, graduating to the color red approximately halfway up the letters. Third, beneath the REDDI GOURMET mark, product descriptors appear, such as "Lemon Pepper" and "Honey BBQ," shown in yellow letters. Fourth, the product descriptors appear centered on the label against a red horizontal bar or "ribbon" appearing approximately a third of the way down the label, running almost the entire width of the label. Fifth, all of the text on the label appears against a black background. Sixth, the seasoning ingredients appear towards the bottom third of the label, below which appears information on cooking instructions, and a reference to CFC's New Jersey address. The six elements that Plaintiffs use to identify REDDI GOURMET as the exclusive source of products featuring the REDDI GOURMET trade dress, as articulated in this paragraph, are referred to hereinafter collectively as the "REDDI GOURMET Label Trade Dress."

42. The REDDI GOURMET Label Trade Dress maintains a consistent overall look and feel throughout CFC's line of REDDI GOURMET premixed seasoning blends.

43. The REDDI GOURMET Label Trade Dress is aesthetic-only and serves no functional purpose.

44. Over the past 25 years, Plaintiffs have expended (and continue to expend) substantial resources on advertising, distributing, marketing, manufacturing, promoting, offering for sale and selling products featuring the REDDI GOURMET Label Trade Dress in connection with REDDI GOURMET premixed seasoning blends.

45. Products featuring the REDDI GOURMET Label Trade Dress have also enjoyed substantial commercial success. Indeed, CFC sold over a million-dollars' worth of premixed seasoning blends featuring the REDDI GOURMET Label Trade Dress in 2025, alone.

46. Consumers in the Northeastern United States regularly encounter products featuring the REDDI GOURMET Label Trade Dress. For example, consumers regularly encounter products featuring the REDDI GOURMET Label Trade Dress at regional supermarkets and grocery stores, including SHOPRITE®, STOP N' SHOP®, KEY FOODS®, KINGS FOOD MARKETS® and FOODTOWN® as well as other independents grocers and supermarkets.

47. Products featuring the REDDI GOURMET Label Trade Dress have regularly received consumer reviews.

48. Based on the foregoing, consumers recognize the REDDI GOURMET Label Trade Dress as identifying CFC as the exclusive source of products featuring the REDDI GOURMET Label Trade Dress.

49. Because of CFC's longstanding, continuous use of the REDDI GOURMET Marks, including within the REDDI GOURMET Label Trade Dress, for premixed seasoning blends, consumers uniquely associate "REDDI GOURMET" with CFC when used and/or featured on packaging that mimics and/or is confusingly similar to the REDDI GOURMET Label Trade Dress, as is the case here.

**II. Defendants and Their Ongoing, Unlawful Conduct**

50. Napolitano was a trusted broker for CFC for approximately 25 years.

51. CFC's owner gave Napolitano a job as an independent broker for CFC in or around 2002, when he faced few other, if any, professional prospects.

52. Napolitano's services for CFC from day one included him visiting various supermarkets and grocery stores to promote and sell CFC's products into stores, often engaging with store meat managers.

53. When CFC made sales to stores, Napolitano would coordinate the shipment of CFC's product to stores directly. More specifically, Napolitano would ship CFC's products to stores via FedEx, paying for these shipments with his own American Express credit card. These shipping costs, in turn, would be submitted to CFC for reimbursement. This arrangement whereby Napolitano paid for shipments and was subsequently reimbursed by CFC, carried on for the duration of the parties' relationship until CFC terminated its relationship with Napolitano and Sal Nap on or about March 31, 2026.

54. CFC's basis for terminating its broker arrangement with Napolitano, and his company Sal Nap, was because in approximately the Fall of 2025, CFC discovered that Napolitano was "padding" Sal Nap's invoices by $5.00 for every shipment made. Hundreds of shipments

were, and are, made over the course of a month. Consequently, Sal Nap and Napolitano's unlawful gains from at least January 1, 2023, through to the fall of 2025, total at least in the tens of thousands of dollars.

55. Upon information and belief, Sal Nap and Napolitano's padding of Sal Nap's invoices began on or about January 1, 2023.

56. CFC confronted Napolitano upon discovering his misconduct in the Fall of 2025. Faced with his American Express credit card statements and his inflated Sal Nap invoices, Napolitano admitted to his unlawful scheme which, in turn, brought him to tears.

57. Around the same time, CFC determined the discrepancies between the American Express card statements and Sal Nap's invoices amounted to at least $93,000.

**A. Defendants and their Business Model**

58. Plaintiffs learned that since the Summer of 2026, through Sal Nap, Napolitano, together with the DeAn's, DeAngelis, and Policastro are engaged in an unlawful scheme to unfairly compete with CFC by, among other things, infringing upon the REDDI GOURMET Marks.

59. Upon information and belief, Napolitano, DeAngelis, and Policastro consult, hold an ownership stake, or otherwise provide services to DeAn's, whereby, among other things, they each advertise, distribute, manufacture, market, promote, offer for sale and sell premixed seasoning blends that compete with CFC and bear Defendants' Infringing REDDI GOURMET Trade Dress as further defined below.

60. Plaintiffs actively police the marketplace for unauthorized uses of its intellectual property. As part of these ongoing policing efforts, Plaintiffs recently discovered Defendants' unlawful use of the REDDI GOURMET Marks and the REDDI GOURMET Label Trade Dress.

Plaintiffs also recently discovered that Defendants' line of premixed seasoning blends includes at least the following products: Chicken Seasoning, Honey BBQ, and Lemon Pepper (collectively, "Defendants' Reddi Serve Seasoned Meats"), as shown in the images below:









61. The labels used on the finished products that incorporate Defendants' premixed seasoning blends shown above are referred to hereinafter collectively as "Defendants' Infringing REDDI GOURMET Trade Dress."

62. Defendants' Infringing REDDI GOURMET Trade Dress violates Plaintiffs' intellectual-property rights.

63. Upon information and belief, Defendants' business model mirrors that of CFC, i.e., they sell various premixed seasoning blends to supermarkets and grocery stores who, then, season their meat or that of third-parties with seasoning, wrap the seasoned meat in clear cellophane packaging and then affix Defendants' adhesive labels to the cellophane package.

64. While the labels say Defendants' products are from "DeAn's of Brooklyn," they conspicuously feature the words "READY" and "GOURMET" prominently, stacked over one another, such that "READY GOURMET" is the dominant phrase on the labels. This is in addition to the appearance of "Reddi" on the labels too, as shown above and below:




65. Defendants offer their preseasoned meat products directly to consumers in-store. In fact, as shown below, CFC's preseasoned meat products are sold in the same meat department with DeAn's preseasoned meat products in at least one SHOPRITE® store located in Edgewater, New Jersey, further compounding a likelihood of confusion:


STREET TACO
Authentic Mexican-Style
CHICKEN RAISED WITH NO ANTIBIOTICS EVER
USE OR FREEZE BY 10/14/26
Reddi Gourmet
Meals In Minutes
LEMON PEPPER
Seasoning
DeAn's Of Brooklyn
Chicken Seasoning
Ready To Cook
Gourmet
Seasoning
"Made Fresh In Store Using Reddi Serve Seasoning"
CHICKEN SEASONED DRUMSTICKS 7S
10/17/26
2.70 lb
$2.99/lb
$8.07
SPLIT CHICKEN BREAST BONE-IN SEASONED
2.64 lb
$3.49/lb
$9.21
Join Today to Enjoy


CHICKEN SEASONED
DRUMSTICKS 7S
10/17/26
2.90 lb
$8.67
Join Today to Enjoy
Reddi Gourmet®
Meals In Minutes
LEMON PEPPER
Seasoning
Made Fresh In our Store
Peel back label for cooking instructions
PEEL HERE
SPLIT CHICKEN BREAST
BONE-IN, SEASONED
10/17/26
2.64 lb
$3.49/lb
$9.21
SAFE HANDLING INSTRUCTIONS

66. Purchasers of the parties' finished meat products, in view of their relatively low-cost, are not purchased by careful, sophisticated purchasers. Indeed, as the above photographs demonstrate, the parties' products are sold at identical or substantially low-price points. For example, although they are different cuts of meat, the DeAn's drumsticks dressed in its seasoning and CFC's chicken thighs dressed in its seasoning are both sold at an identical price of $2.99 per pound. The other cuts of CFC's chicken and DeAn's chicken shown in the photographs above are similarly sold at $3.49 per pound and $4.69 per pound, respectively. And the total comparable costs of the parties' respective chicken products in those photos (a function of weight and price per pound) is quite similar, for example, $8.67 for the DeAn's chicken drumsticks product and $9.21 for the CFC chicken breast product. The foregoing low-price points contribute to these purchases being impulse buys, rather than purchases made with great care.

67. The parties' finished meat products are encountered by the same purchasers under circumstances that give rise to the mistaken belief that the products came from a common source. When products are relatively low-priced and subject to impulse buying, the risk of a likelihood of confusion is increased because undiscerning purchasers of such products are held to a lesser standard of purchasing care.

68. Upon information and belief, DeAngelis, principal of DeAn's, with the assistance of Policastro, Napolitano, and Sal Nap, are advertising, distributing, marketing, manufacturing, promoting, offering for sale, and selling their competing seasoning products in the same geographic territory, including in the very same supermarkets and grocery stores, that CFC operates in under the substantially similar mark REDDI SERVE, as shown below.

69. Defendants' appropriation of CFC's distinctive misspelling of "REDDI" — R-E-D-D-I — in association with their branding of REDDI SERVE premixed seasoning blends is a

blatant effort to sow confusion vis-à-vis CFC's REDDI GOURMET Marks and its products, as shown below:







70. Defendants' labelling on its cardboard packing boxes mimics that of CFC's, by using the same or substantially similar typeface to form the words "Reddi" and "Serve" and, in

the example above, "Honey," "BBQ," and "Rub." Additionally, the general layout and orientation of Defendants' packing labels is the same as CFC's, with the product ingredients, Universal Product Code ("UPC") and "mfg. For:" appearing below the UPC barcode.

71. The use of REDDI SERVE is not innocent or the result of inadvertence on the part of Napolitano or the other defendants; rather, it is indicative of pernicious, intentional conduct. On March 31, 2026, Napolitano filed a U.S. trademark application with the USPTO for REDDI SERVE for precisely the same goods as set forth in one of RG's REDDI GOURMET registrations. (*Compare* U.S. Reg. No. No. 4291209, *with* U.S. Serial No. 99736477).

72. Further underscoring Napolitano's bad faith in filing his REDDI SERVE U.S. trademark application, was that it was filed at 5:23 p.m. (Eastern) the very same day that CFC terminated its relationship with him and Sal Nap.

**B. Plaintiffs' Notice to Defendants and Continued Infringement**

73. After learning of Defendants' unauthorized use of the REDDI GOURMET Marks, on October 1, 2026, Plaintiffs notified Defendants that their conduct was unlicensed and infringed upon Plaintiffs' trademark rights and demanded that Defendants cease their use of the REDDI GOURMET Marks.

74. None of the Defendants ever responded to the October 1, 2026 letter, and instead continued to use the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress in connection with the advertising, distributing, marketing, manufacturing, promoting, offering for sale and selling of their competing premixed seasoning products.

75. Defendants' refusal to cease use of the REDDI GOURMET Marks and other similar marks, and their continued conduct after receiving notice of their unlawful acts has

intentionally perpetuated consumer confusion, has caused actual confusion, and continues the infringement of Plaintiffs' exclusive trademark rights.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**IN VIOLATION OF 15 U.S.C. § 1114**
**(*As to All Defendants*)**

76. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

77. RG is the owner of three U.S. federal trademark registrations for REDDI GOURMET and a REDDI GOURMET-formative mark on the Principal Register.

78. The registrations cover prepared and packaged meats, dry spices and stuffing mixes.

79. The registrations are valid and subsisting and constitute *prima facie* evidence of ownership and validity.

80. Plaintiffs have used the REDDI GOURMET Marks in United States commerce continuously for decades, establishing strong common-law rights in addition to the foundation for RG's U.S. trademark registrations.

81. Defendants use the REDDI GOURMET Marks (or substantially indistinguishable variations) in connection with advertising, distributing, marketing, manufacturing, promoting, offering for sale and selling their own premixed seasoning blends.

82. Upon information and belief, Defendants' unlawful use occurs in interstate commerce, including communications directed to CFC's supermarket and grocery store customers in New Jersey and other states.

83. Defendants are not licensed, authorized, or otherwise permitted to use the REDDI GOURMET Marks.

84. Defendants are not a CFC partner, never have been a CFC partner, and do not participate in CFC's business operations.

85. Defendants use the same or confusingly similar marks to the REDDI GOURMET Marks in interstate commerce, without Plaintiffs' consent, in connection with the advertising, distributing, marketing, manufacturing, promoting, offering for sale, and selling of confusingly similar premixed seasoning blends.

86. Defendants' conduct creates the false impression that DeAn's products are affiliated with Plaintiffs, or that DeAn's is authorized to offer CFC-branded premixed seasoning blends, or that DeAn's products are endorsed or approved by Plaintiffs, when they are not.

87. This conduct creates a likelihood that in-store consumers will be confused as to the origin of such products, or their authorization, sponsorship, or affiliation with Plaintiffs.

88. Thus, Defendants' use of the REDDI GOURMET Marks is likely to cause confusion, mistake, or deception as to source, sponsorship, affiliation, or approval.

89. Defendants' unauthorized and unlawful conduct is willful.

90. Plaintiffs notified Sal Nap and Napolitano repeatedly that their use of the REDDI GOURMET Marks was unauthorized and infringing. Plaintiffs also notified the remaining defendants that their conduct too was unauthorized and infringing.

91. Despite such notice, Defendants continue to unlawfully use the REDDI GOURMET Marks in connection with their premixed seasoning blends.

92. Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the REDDI GOURMET Marks (or substantially indistinguishable variations) in interstate commerce, to which Defendants are not entitled at law or in equity.

93. Defendants' conduct as alleged in this Count thus constitutes willful infringement of Plaintiffs' U.S. registered trademarks in violation of 15 U.S.C. §1114.

94. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

95. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT II**
**FEDERAL TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)**
***Infringement of REDDI GOURMET Label Trade Dress***
**(*As to All Defendants*)**

96. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

97. Plaintiffs have the exclusive right to use the REDDI GOURMET Label Trade Dress in United States commerce for premixed seasoning blends (including, for example, in connection with Reddi Gourmet products).

98. Plaintiffs' exclusive rights in and to the REDDI GOURMET Label Trade Dress predate any rights that Defendants could establish in and to Defendants' Infringing REDDI GOURMET Trade Dress.

99. Plaintiffs' REDDI GOURMET Label Trade Dress is fanciful and/or arbitrary and, therefore, is inherently distinctive.

100. The REDDI GOURMET Label Trade Dress identifies Plaintiff, CFC, as the exclusive source of products featuring the REDDI GOURMET Label Trade Dress and, therefore, has acquired distinctiveness.

101. REDDI GOURMET Label Trade Dress is non-functional.

102. Defendants' Infringing REDDI GOURMET Trade Dress constitutes a symbol or device within the meaning of 15 U.S.C. § 1125(a).

103. Defendants' Infringing REDDI GOURMET Trade Dress is nearly identical to, and creates the same overall commercial impression as, Plaintiffs' REDDI GOURMET Label Trade Dress.

104. Products featuring the Defendants' Infringing REDDI GOURMET Trade Dress, and products featuring Plaintiffs' REDDI GOURMET Label Trade Dress, are the same, namely: premixed seasoning products.

105. Products featuring Defendants' Infringing REDDI GOURMET Trade Dress, and products featuring Plaintiffs' REDDI GOURMET Label Trade Dress, appeal to overlapping customer bases, namely: consumers who cook and/or eat seasoned meat.

106. Consumers encounter products featuring Defendants' Infringing REDDI GOURMET Trade Dress, and products featuring Plaintiffs' REDDI GOURMET Label Trade Dress, in overlapping and, in some instances, identical, trade channels.

107. Defendants' use of Defendants' Infringing REDDI GOURMET Trade Dress in interstate commerce on, for, and/or in connection with the advertising, distributing, marketing, manufacturing, promoting, offering for sale and/or sale of premixed seasoning blends (including, without limitation, Defendants' premixed seasoning blends) is likely to cause consumer confusion, mistake, and/or deception about whether DeAn's are Plaintiffs, and/or whether DeAn's is a licensee, authorized distributor, and/or affiliate of Plaintiffs and/or products featuring Plaintiffs' REDDI GOURMET Label Trade Dress.

108. Defendants use of the Defendants' Infringing REDDI GOURMET Trade Dress in interstate commerce on, for, and/or in connection with the advertising, distributing, marketing,

manufacturing, promoting, offering for sale and selling of products is likely to cause consumer confusion, mistake, and/or deception about whether DeAn's and/or products featuring Defendants' Infringing REDDI GOURMET Trade Dress are affiliated, connected, and/or associated with Plaintiffs and/or products featuring Plaintiff's REDDI GOURMET Label Trade Dress.

109. Defendant's use of Defendants' Infringing REDDI GOURMET Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products is likely to cause consumer confusion, mistake, and/or deception about whether products featuring Defendants' Infringing REDDI GOURMET Trade Dress originate with, and/or are sponsored or approved by, and/or are offered under a license from, Plaintiffs or vice versa.

110. Plaintiffs have not consented to Defendants' use(s) of the Defendants' Infringing REDDI GOURMET Trade Dress for any purpose.

111. Based on Plaintiffs' long-standing presence in the marketplace, coupled with Sal Nap and Napolitano years of exposure to CFC's business as CFC's agents, Sal Nap and Napolino had actual and constructive knowledge of Plaintiffs' superior rights in and to the Plaintiffs' REDDI GOURMET Label Trade Dress prior to Defendants' adoption and use of their Defendants' Infringing REDDI GOURMET Trade Dress.

112. Based on Plaintiffs' long-standing presence in the marketplace, coupled with their professional ties to Sal Nap and Napolino, defendants DeAn's, DeAngelis and Policastro had actual and constructive knowledge of Plaintiffs' superior rights in and to Plaintiffs' REDDI GOURMET Label Trade Dress prior to Defendants' adoption and use of their Defendants' Infringing REDDI GOURMET Trade Dress.

113. Upon information and belief, products featuring Defendants' Infringing REDDI GOURMET Trade Dress are inferior in quality to products featuring Plaintiffs' REDDI GOURMET Label Trade Dress.

114. Upon information and belief, Defendants copied, adopted, and/or used the Defendants' Infringing REDDI GOURMET Trade Dress in interstate commerce in furtherance of Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of products featuring Plaintiffs' REDDI GOURMET Label Trade Dress.

115. Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of Defendants' Infringing REDDI GOURMET Trade Dress in interstate commerce, to which Defendants are not entitled at law or in equity.

116. Defendants' conduct as alleged in this Count thus constitutes willful trade dress infringement in violation of 15 U.S.C. § 1125(a).

117. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

118. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT III**
**FEDERAL UNFAIR COMPETITION, FALSE ASSOCIATION, AND FALSE ENDORSEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)**
**(*As to All Defendants*)**

119. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

120. Defendants' acts and conduct complained of herein including, without limitation, the use of the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade

Dress, constitutes unfair competition, false association, and/or false endorsement in violation of 15 U.S.C. § 1125(a)(1)(A).

121. Defendants aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

122. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT IV**
**FEDERAL FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING**
**IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)**
**(*As to All Defendants*)**

123. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

124. Defendants' acts and conduct complained of herein including, without limitation, the use of the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress, constitutes false designation or origin and false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

125. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

126. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT V**
**TRADEMARK INFRINGEMENT UNDER N.J. STAT. ANN. § 56:3-13.16 AND COMMON LAW TRADEMARK INFRINGEMENT**
**(*As to All Defendants*)**

127. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

128. Defendants' acts and conduct complained of herein including, without limitation, their use of the REDDI GOURMET Marks, constitutes trademark infringement in violation of N.J. STAT. ANN. § 56:3-13.16 and New Jersey common law.

129. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

130. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT VI**
**TRADE-DRESS INFRINGEMENT UNDER N.J. STAT. ANN. § 56:3-13.16 AND COMMON LAW TRADE DRESS INFRINGEMENT**
**(*As to All Defendants*)**

131. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

132. Defendants' acts and conduct complained of herein including, without limitation, Defendants' Infringing REDDI GOURMET Trade Dress, constitutes trade-dress infringement in violation of N.J. STAT. ANN. § 56:3-13.16 and New Jersey common law.

133. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

134. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT VII**
**NEW JERSEY STATUTORY UNFAIR COMPETITION N.J.S.A. 56:4-1**
**AND COMMON LAW UNFAIR COMPETITION**
***Infringement of REDDI GOURMET Marks and***
***Use of Defendants' Infringing REDDI GOURMET Trade Dress***
**(*As to All Defendants*)**

135. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

136. Defendants' acts and conduct complained of herein including, without limitation, Defendants' use of the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress, constitute unfair competition in violation of N.J. STAT. ANN. § 56:4-1 and New Jersey common law.

137. Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury.

138. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm as a result of Defendants' conduct detailed above in an amount to be determined at trial.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(*Against Sal Nap & Napolitano*)**

139. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

140. Sal Nap and Napolitano have profited from the aforementioned acts committed against CFC and, therefore, they have been unjustly enriched at the expense of CFC in an amount not less than $93,000.

141. It would be unjust to allow Sal Nap and Napolitano to retain the benefit of profiting at the expense of CFC as a result of the foregoing conduct.

142. Sal Nap and Napolitano's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, CFC to sustain irreparable damage, loss, and injury.

143. As a direct result of Sal Nap and Napolitano's conduct, CFC has been damaged in amount to be determined at trial, but not less than $93,000.

**COUNT IX**
**CONVERSION**
***(Against Sal Nap & Napolitano)***

144. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

145. Defendants intentionally and without authority, assumed or exercised control over money belonging to CFC, specifically the stolen $93,000.

146. CFC had a possessory right or interest in such money, in that they had title to it and such title never passed to either Sal Nap or Napolitano.

147. Sal Nap and Napolitano's dominion and control over the $93,000 interfered with CFC's rights, and was in derogation thereof, in that CFC was, and is, unable to make use of the $93,000.

148. The acts of Sal Nap and Napolitano complained of herein constitute common law conversion.

149. Sal Nap and Napolitano's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, CFC to sustain irreparable damage, loss, and injury.

150. As a direct result of Sal Nap and Napolitano's conduct, CFC has no adequate remedy at law and has been damaged in amount to be determined at trial, but not less than $93,000.

**COUNT X**
**BREACH OF A DUTY OF LOYALTY**
**(*Against Sal Nap & Napolitano)***

151. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

152. Sal Nap and Napolitano, as a broker and agent for CMC, was bound as a matter of law to exercise the utmost good faith and loyalty in the performance of his duties during and after this relationship with CFC, as required by New Jersey law.

153. Sal Nap and Napolitano breached their duty of good faith and loyalty to CFC by (i) wrongly obtaining monies to which they are not entitled in an amount not less than $93,000; and (ii) using the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress, in a manner inconsistent with CFC's interests.

154. CFC has been damaged by Sal Nap and Napolitano's aforementioned unlawful conduct and will continue to suffer irreparable harm unless Sal Nap and Napolitano's are enjoined from engaging in any such further conduct.

155. CFC has also suffered, and continues to suffer, damages in an amount to be proven at trial, but no less than $93,000,00.

156. In addition to the money damages alleged in the foregoing paragraph, CFC's remedy at law is inadequate and accordingly CFC requires this Court to enjoin and restrain Sal Nap and Napolitano from engaging in any such further conduct.

**COUNT XI**
**CIVIL CONSPIRACY**
**(*As to All Defendants*)**

157. Plaintiffs repeat and realleges each and every allegation set forth above, as if fully set forth herein.

158. All five defendants agreed with one another to commit the tortious conduct set forth above.

159. Each defendant intentionally and knowingly took steps alleged above in furtherance of their agreement to injure CFC by, among other things, the unauthorized use of the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress, in the process depriving CFC of its position of superior commercial advantage.

160. Defendants aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, CFC to sustain irreparable damage, loss, and injury.

161. As a direct result of Defendants' conduct, CFC has no adequate remedy at law and has been damaged in amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the unlawful acts of Defendant, as alleged herein, Plaintiffs pray that the Court enter a judgment against Defendants:

A. On Counts I through VII of the Complaint, an Order:

1. Declaring that the REDDI GOURMET Marks are inherently distinctive.

2. Declaring that the REDDI GOURMET Label Trade Dress is inherently distinctive;

3. Declaring that the REDDI GOURMET Label Trade Dress has acquired distinctiveness;

4. Declaring that Defendants' conduct, as alleged herein, constitutes trademark infringement in violation of 15 U.S.C. § 1114; N.J. STAT. ANN. § 56:3-13.16; and New Jersey common law;

5. Declaring that Defendant's conduct, as alleged herein, constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a); N.J. STAT. ANN. § 56:3-13.16; and New Jersey common law;

6. Declaring that Defendants' conduct, as alleged herein, constitutes unfair competition, false association, and false endorsement in violation of 15 U.S.C. § 1125(a)(a)(1)(A); N.J. STAT. ANN. § 56:4-1; and New Jersey common law;

7. Declaring that Defendants' conduct, as alleged herein, constitutes false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a)(1)(B);

8. Pursuant to 15 U.S.C. § 1116(a), preliminarily and permanently enjoining Defendants, and their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, as well as any persons or entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, shareholders, servants, and partners, and those persons in active concert or participation with them, from committing any additional acts of trademark infringement, trade-dress infringement or unfair competition;

9. Pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve upon Plaintiffs' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

10. Pursuant to 15 U.S.C. § 1117(a), awarding to Plaintiff: (a) Defendants' profits derived from the sale of all goods and materials bearing and/or featuring the REDDI GOURMET Marks and Defendants' Infringing REDDI GOURMET Trade Dress including, without limitation, Defendants

products and/or Defendants' profits derived from the sale of all goods and materials bearing and/or featuring any trade dress or other indicia of source that is confusingly similar to the REDDI GOURMET Label Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' products; (b) treble the amount of Plaintiff's damages; and (c) the costs that Plaintiffs incurred in this lawsuit;

11. Declaring that Defendants' acts and conduct as alleged herein including, without limitation, continuing to use the REDDI GOURMENT Marks and use and of Defendants' Infringing REDDI GOURMET Trade Dress in supermarkets and grocery stores **after** receiving notice of their unlawful acts constitutes willfulness; and

12. Declaring this an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiffs their costs and reasonable attorneys' fees thereunder pursuant to 15 U.S.C. § 1117(a).

B. An Order preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers and all persons in active concert and participation with them:

1. From using Plaintiffs' REDDI GOURMET Marks (or substantially indistinguishable variations) for, on, and/or in connection with manufacturing, distributing, advertising, marketing, promoting, offering for sale, and/or selling any goods or services, including, without limitation, Defendants' premixed seasoning blends;

2. From using Defendants' Infringing REDDI GOURMET Trade Dress for, on, and/or in connection with manufacturing, distributing, advertising, marketing, promoting, offering for sale, and/or selling any goods or services, including, without limitation, Defendants' premixed seasoning blends;

2. From using any trade dress or other indicia of source that is confusingly similar to the REDDI GOURMET Label Trade Dress for, on, and/or in connection with manufacturing, distributing, advertising, marketing, promoting, offering for sale, and/or selling any goods or services, including, without limitation, Defendants' premixed seasoning blends;

3. Disseminating and/or causing any third party to disseminate any false, misleading, or deceptive statement about the nature, quality, or characteristics of any of Plaintiffs' products.

4. Ordering the recall, seizure, and/or removal from all stores of all goods and materials bearing and/or featuring the REDDI GOURMET Marks (or substantially indistinguishable variations) or Defendants' Infringing REDDI GOURMET Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends.

5. Ordering the recall, seizure, and/or removal from all stores of all goods and materials bearing and/or featuring any trade dress or other indicia of source that is confusingly similar to the REDDI GOURMENT Marks or Plaintiffs' REDDI GOURMET Label Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends.

6. Ordering the destruction, repackaging, and/or re-labeling of all goods and materials bearing and/or featuring the REDDI GOURMET Marks (or substantially indistinguishable variations) or Defendants' Infringing REDDI GOURMET Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends.

7. Ordering the destruction, repackaging and/or re-labeling of all goods and materials bearing and/or featuring any trade dress or other indicia of source that is confusingly similar to the REDDI GOURMET Marks (or substantially indistinguishable variations) or Plaintiffs' REDDI GOURMET Label Trade Dress, whether in tangible or intangible form including, without limitation, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends.

8. Ordering Defendants to provide Plaintiffs with a list showing to whom and where all goods and materials bearing and/or featuring Defendants' Infringing REDDI GOURMET Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends, were sold.

9. Ordering Defendant to provide Plaintiff with a list showing to whom and where all goods and materials bearing and/or featuring any trade dress or other indicia of source that is confusingly similar to Plaintiffs' REDDI GOURMET Label Trade Dress, whether in tangible or intangible form including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends, were sold.

10. Ordering Defendants to provide Plaintiffs with a full accounting of all manufacture, distribution and sale of goods and materials bearing and/or featuring Defendants' Infringing REDDI GOURMET Trade Dress, including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends, including all profits derived therefrom.

11. Ordering Defendants to provide Plaintiffs with a full accounting of all manufacture, distribution and sale of goods and materials bearing and/or featuring any trade dress or other indicia of source that is confusingly similar to Plaintiffs' REDDI GOURMET Label Trade Dress, whether in tangible or intangible form, including, without limitation, Defendants' premixed seasoning blends and all meats finished with Defendants' premixed seasoning blends.

12. Ordering Salvatore Napolitano to expressly abandon his U.S. trademark application for REDDI SERVE (U.S. Serial No. 99736477).

C. As to Count VIII for unjust enrichment, judgment in Plaintiffs' favor for an amount not less than $93,000.

D. As to Count IX for conversion, judgment in Plaintiffs' favor for an amount not less than $93,000.

E. As to Count X for breach of duty of loyalty, judgment in Plaintiffs' favor for an amount not less than $93,000.

F. As to Count XI for civil conspiracy, judgment in an amount to be determined at trial.

G. Awarding Plaintiffs' punitive and exemplary damages as the Court finds appropriate.

H. Awarding Plaintiffs' their reasonable attorneys' fees and costs incurred in connection with this action.

I. Awarding Plaintiffs' interest, including pre- and post-judgment interest, on the foregoing sums.

J. Awarding Plaintiffs such other and further relief as the Court may deem just, proper

and equitable.

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
**MANDELBAUM BARRETT PC**

By:________________________

Joel G. MacMull, Esq.
Samantha Fasanello, Esq.
Brian M. Block, Esq.
**MANDELBAUM BARRETT PC**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel. (973) 736-4600
jmacmull@mblawfirm.com
sfasanello@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Plaintiffs*

Dated: November 13, 2026

# VERIFICATION

I, Peter Policastro, the sole principal of both Central Food Corporation, d/b/a Reddi Gourmet and Reddi Gourmet, LLC, the plaintiffs in this action, have read the foregoing **VERIFIED COMPLAINT AND JURY DEMAND** dated November 13, 2026 (the "Complaint"). The information in the Complaint has been obtained by me or on my behalf. As to those matters set forth in the Complaint about which I have personal knowledge, I believe these allegations to be true; as to those allegations about which I have no personal knowledge, if any, and am relying upon those who have obtained and prepared those allegations, I have no reason to believe those allegations are not true.

Peter Policastro

Dated: November 13, 2026